**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION**

LINDA SHAFFER,

      Plaintiff,

v.                          CASE NO.:

INDEPENDENT ADMINISTRATIVE
SERVICES, LLC, and AMERILIFE
GROUP, LLC,

      Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

This is an action for violation of the Florida Civil Rights Act ("FCRA"). As more fully

described below, Plaintiff, LINDA SHAFFER ("Plaintiff") sues the Defendants, INDEPENDENT

ADMINISTRATIVE SERVICES, LLC and AMERILIFE GROUP, LLC (collectively

"Defendants"), to secure redress for Defendants' violation of her civil right to be free from

employment discrimination on the basis of her gender and age and retaliation.

**JURISDICTION AND VENUE**

1.     This is an action for damages in excess of $15,000.00, exclusive of interest, costs,

and equitable relief for violations of the FCHR. Fla. Stat. § 760.10, *et seq.*

2.     Venue is proper in this Court because the unlawful discrimination and retaliation

giving rise to the claims herein occurred within this judicial district, and the Defendants are located

in this judicial district.

3.     At all times material, Defendants are a health insurance, life insurance and annuity

marketing organization. Defendant INDEPENDENT ADMINISTRATIVE SERVICES, LLC is a

wholly-owned subsidiary and joint employer of Defendant AMERILIFE GROUP, LLC.

4.     At all times material, the Plaintiff is and was a resident of Pinellas County, Florida.

5.     Plaintiff has complied with all conditions precedent to the filing of this action. On

or about June 14, 2017, Plaintiff timely dual filed a written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

6.    Plaintiff's charge has been pending with the EEOC and FCHR for more than 180 days, and neither the FCHR nor the EEOC has not issued a finding.  This action is being filed within four years of Defendants' discriminatory actions and two years for purposes of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. §§ 206, *et seq*.

7.    All administrative prerequisites have been satisfied and this action is timely filed.

## PARTIES

8.    Plaintiff was hired by Defendants on or about February 2012 and employed until October 11, 2016, when she was abruptly fired without prior notice. Plaintiff was an excellent employee who performed her job with distinction. Plaintiff is almost 55 years of age.

9.    Defendants are an employer within the meaning of the FCRA.

10.   Plaintiff is an employee within the meaning of the FCRA.

## STATEMENT OF FACTS

11.   Plaintiff was originally offered the position of Assistant Vice President ("AVP") of AmeriLife Property & Casualty Insurance Agency, LLC, an alter ego of the Defendants. However, Defendants gave her the title "Account Manager" even though she was performing the AVP role, including meeting with carriers, performing forensic accounting for the department, Agent in Charge with the state and 24-hour on call. Defendants then hired a male whom they paid the same rate, but he had no other responsibilities other than sales and service. Eventually, Plaintiff received a $2,000 raise. When the CCO left, Plaintiff offered to take over the corporate insurance program and then stepped into her role as Corporate Insurance Manager. It took until April 2015 to be allowed to use the appropriate title.

2

12.    Defendants' management team is extremely male-dominated, including: Chief Executive Officer, Timothy North; Chief Marketing Officer, new-hire Mike Vietri (joined AmeriLife in March 2016); Chief Operating Officer, Paul Carter; General Counsel, Nathan Hightower; new-hire Chief Distribution Officer Pete Adkins (joined AmeriLife in 2016); and Director of Human Resources, Mike Massrock.

13.    Plaintiff reported to male General Counsel, Nathan Hightower.

## I.    Age and Gender Discrimination/Equal Pay Violations

14.    Defendants' current management team makes hiring, promotion, salary and termination decisions are based on age and gender. This attitude is exemplified by Director of Human Resources Mr. Massrock's recently implemented initiative to hire young, male college students instead of older, more-experienced workers and fast-tracking them "immediately into the management and administrative functions of the [company]." [*See* "AmeriLife Has Jobs For Graduates 'A Head Above'" (Feb. 10, 2015)][1]

15.    Defendants' CEO, Timothy North, has stated: "I'm looking for graduates who were a head above their peers scholastically, and who want the opportunity to be trained as leaders.... Beyond their schooling, the only requisites are attitude, ambition and motivation.... Our goal is to hire exceptional men and women who will be mentored and groomed in functions throughout the organization. They will become AmeriLife's leaders of the future."

16.    In contrast, Mr. North did not consider Plaintiff or other employees over the age of 50 to be potential "leaders of the future" or provide them the "opportunity to begin [their] career near the top." To the contrary, the company terminated Plaintiff and fired, or forced to quit, other employees over the age of 50.

---

[1] 1 Available at http://www.amerilife.com/AmeriLifeNews/tabid/284/ID/74/AmeriLife-Has-Jobs-For-Graduates-A-Head-Above.aspx

17.    Not only that, Plaintiff and other female workers were regularly paid wages for equal work at a rate significantly less than the rate paid to male employees, in violation of the Equal Pay Act of 1963 and the FCRA. Younger males, in particular, are afforded greater pay and opportunities in the company than Plaintiff or other women. For example, the national average annual salary for Plaintiff's position is $113,000 year and the low on the salary spectrum is $72,000. Yet, Plaintiff was paid only $46,910 per year because of her gender. Her pay eventually was increased slightly to $50,000.

18.    Defendants' Director of Human Resources Mike Massrock harbors similar bias in favor of hiring younger employees. Touting his initiative to hire young "college students ... as part of a novel program designed to identify and cultivate future corporate leadership," Mr. Massrock opined: "We're *anticipating fresh ideas from today's bright young minds* on how to market and distribute insurance products to Millennials." [*See* "Amerilife Welcomes College Interns" (July 07, 2015)].[2]

19.    Mr. Massrock's comments reflect his belief that "older" minds are not bright enough to figure out "how to market" or "distribute insurance products to Millennials," or that younger employees are necessary for such work.

20.    The discriminatory attitude of Defendants' management is reflected in its culture that permits harassment and disparate treatment of women in the workplace, and by how management responds to women who complain of discrimination.

21.    For example, other employees have noted that the CEO has commented that the company "needs to hire younger pretty woman to attract the young men to work in the company."

22.    This corporate culture of discrimination is further reflected in the treatment of older, female employees by the Defendants' General Counsel. Mr. Hightower treats women in the

---

[2] Available at http://www.amerilife.com/AmeriLifeNews/tabid/284/ID/87/AMERILIFE-WELCOMES-COLLEGE-INTERNS.aspx

workplace with disdain, creates a gender-based hostile work environment and subjects women to disparate treatment based on gender.

23.   Mr. Hightower's discriminatory animus is condoned by Defendants and its culture of gender discrimination.   Specifically, Mr. Hightower treated and targeted Plaintiff and other women by subjecting them to terms and conditions of employment to which he did not subject comparable male employees, such as by exposing them to fear, intimidation and a hostile work environment. He makes females do "women's work" such as putting eye drops in his eyes for him, but does not require male employees to do same. He would yell at Plaintiff if she was a second late or did not come into a meeting to put in his eye drops (note that Plaintiff was a highly experienced, management-level executive in the insurance industry). He yells and screams at women and bullies them (e.g., sending them home to "ponder how to answer a question correctly"), while treating similarly situated male employees with respect.

24.   Despite being a manager, Plaintiff was excluded from most meetings and her suggestions were ignored because she is a woman, thereby affecting her terms and conditions of employment. She also was subject to disparate pay practices because of her gender, as discussed above.

## II.   Unlawful Retaliation

25.   In or about early September 2016, an employee sent an anonymous letter to a board member regarding claims of allegations of harassment, discrimination, hostile work environment. Plaintiff was named in the letter and, although she has not seen the letter, understands that the author suggested to "look into how Nathan Hightower treats Linda," or words to that effect. However, Plaintiff did not write the letter.

26.   On September 13, 2016, Mr. Massrock asked Plaintiff if there was anything that she would like to discuss with him related to the women being treated discriminatorily and being

exposed to a hostile work environment. Ms. Shaffer expressed agreement with the comments in the letter, such as that women were being treated discriminatorily and were being exposed to a hostile work environment.

27.     Instantaneously, on Saturday, September 17, 2016, Plaintiff learned that the company had deactivated her access to the computer network, and she could no longer log into the email server. The same day, Mr. Massrock placed Plaintiff on a two-day suspension and told her to not come into work until the next Wednesday. Meanwhile, Plaintiff was removed from her position, her workstation was relocated, and she was told that she now would report directly to Mr. Massrock for her new assignment.

28.     Plaintiff contacted a few other women who worked there and all their emails were cut off too. The Defendants' CEO and upper management apparently felt that they knew who wrote the letter and/or all who were part of it, so even if not named in the letter they were all retaliated against, had their emails cut off and were treated as "traitors to the company."

29.     As instructed, Plaintiff reported to work the next Wednesday and went to see Mr. Massrock, at which point he told her, "you will not report to Nathan and will not be doing your other job any longer." Plaintiff was shocked and asked, "who is going to do it?" Mr. Massrock replied, "We haven't figured that out yet." Plaintiff than discovered that Mr. Massrock had moved her seat and had reassigned to a new program in customer service.

30.     Another woman was called in and immediately was written up for "using personal email" on the work computer. She filed a formal complaint of harassment, retaliation and discrimination against the company.

31.     Thereafter, Plaintiff began receiving pressure and was subjected to interrogation in response to her protected activity. She promptly was called into a meeting with Mr. Massrock and an attorney, who declared that there was an investigation going on and that she needed to give a

statement right now. Plaintiff (who was upset and still distraught because her mother had recently passed away) asked to reschedule the meeting.

32.     The same week (during a hurricane), Plaintiff was called almost daily to come in and talk to someone. She then was brought in and told to sign a declaratory statement saying that she was not aware of any of illegal harassment, discrimination or retaliation as alleged in the complaint. Plaintiff refused to sign and indicated that she, in fact, agreed that harassment, discrimination and retaliation were taking place, including but not limited to herself.

33.     Because Defendants' management and Board members were aware of the harassment and discrimination, they were forcing Plaintiff and other women to sign statements falsely saying that they did not know about any of the wrongdoing and that it was not true. In fact, it was true, and the women were being forced to execute the false statements or be fired.

34.     On Monday, October 10, 2016, the stress of the multiple interrogations, pressure and harassment of the previous week, on top of the recent loss of her mother, caused Plaintiff to become exhausted and physically ill. Therefore, she asked to use two days of sick time.

35.     Later that day, Defendants' new Chief Marketing Officer sent Plaintiff an email that contained an attachment from Hightower, as the author of the contents of the email, informing her:

> I have now concluded that you are not the right person to run the E&O program. I have so advised Human Resources and requested that they determine whether there is another position available for you with the Company. Mike Mr. Massrock will be in contact with you in this regard.

36.     Mr. Massrock did contact Plaintiff, but not to offer her another position. Rather, on October 11, 2016, Mr. Massrock sent her an email stating that, "[b]ased upon your recent inappropriate actions, the Company is terminating your employment effective today."

37.     In further retaliation, Plaintiff was instructed to inform Defendants by the following day, October 12, 2016, that she would execute a "Separation Agreement and General Release" which (in exchange for 4 weeks pay) contained, *inter alia,* the following terms:

(1)     Release of any and all claims against the company (including AmeriLife Holdings, LLC and its subsidiaries and board members), including but not limited to any and all claims under Title VII, ADEA, OWBPA, ADA, FLSA, FMLA, Florida Civil Rights Act and all other employment-related statutes, as well as any right to recover any damages, costs or attorneys' fees for any charge of discrimination filed with the EEOC;

(2)     Formal retraction of her complaint of discrimination and (false) agreement that the company did not engage in any discrimination, harassment, retaliation or hostile work environment;

(3)     Two-year non-compete, non-solicitation provision, including agreement that the company can send written notice of Plaintiff's "inability to service their insurance needs";

(4)     Unilateral confidentiality and non-disparagement provisions;

(5)     Waiver of jury trial; and

(6)     Waiver of right to re-employment.

36.     On October 12, 2016, Plaintiff submitted a written complaint to Mr. Massrock, stating as follows:

> I believe that my termination is continued discrimination and harassment of me based on my sex (female) and age as well as continued retaliation.
>
> As you are aware and as has been discussed at length, myself and the other female coworkers in the office have now been further harassed and retaliated against because of an anonymous complaint letter that was sent to Corporate which outlined the harassing and discriminatory environment that we are forced to work in on a daily basis.
>
> When I spoke with you, as the Director of HR, last week and reiterated the discriminating and harassing treatment, I was hopeful that the issue would be resolved. Now, in an act of final retaliation for my having engaged in protected activity, I have been terminated. This discriminatory and retaliatory conduct is in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Florida Civil Rights Act.

37.     Defendants have taken no action to remedy the discrimination or retaliation. Rather, it has attempted to silence the victims through forced false statements and intimidation.

8

38.     Plaintiff was fired because of her statutorily protected activity and/or age or gender. There are no legitimate, non-retaliatory or non-discriminatory reasons for Plaintiff's termination. Indeed, she was a stellar employee with no history of disciplinary issues of any kind.

39.     Moreover, assuming the Defendants assert a purportedly non-retaliatory or non-discriminatory reason (such as calling out sick), the company blatantly ignored its progressive discipline policy by engaging in actions without providing any prior notice.

40.     As the Eleventh Circuit recently held in *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. Appx. 883 (11th Cir. 2016), failure to follow the company's progressive discipline policy is convincing evidence of discrimination.

41.     Moreover, no similarly-situated employees who did not engage in protected conduct of in the same protected category were subjected to similar adverse employment actions for calling out sick. Indeed, it is relatively common for employees to call out sick, without suffering immediate termination.

42.     The above-described conduct constitutes discrimination and retaliation in violation of the Age Discrimination in Employment Act, the Equal Pay Act and the Florida Civil Rights Act.

43.     Plaintiff has suffered damages for lost wages, lost benefits, emotional distress and other damages as a result of this unlawful conduct.

44.     Defendants have conducted itself intentionally, deliberately, willfully, and in callous disregard of the rights of Plaintiff.

45.     By reason of Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies, including attorneys' fees and costs, available under Title VII, the ADEA and the FCRA.

9

46.     Plaintiff has been required to retain the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

## COUNT I
### Age Discrimination in Violation of the ADEA

47.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

48.      Defendants' conduct as herein alleged violated the ADEA, which prohibits age discrimination.

49.     The foregoing actions of Defendants constitute discrimination against Plaintiff based upon her age. Plaintiff was subjected to disparate treatment based on her age.

50.     As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered injury, for which Plaintiff is entitled to legal and injunctive relief.

51.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
### Age Discrimination in Violation of the FCRA

52.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

53.      Defendants' conduct as herein alleged violated the FCRA, which prohibits age discrimination.

54.     The foregoing actions of Defendants constitute discrimination against Plaintiff based upon her age. Plaintiff was subjected to disparate treatment based on her age.

55.     As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

56.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
### Gender Discrimination in Violation of the FCRA

57.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

58.     Defendants' conduct as herein alleged violated the FCRA, which prohibits gender discrimination.

59.     The foregoing actions of Defendants constitute discrimination against Plaintiff based upon her gender. Plaintiff was subjected to disparate treatment based on her gender.

60.     As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

61.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
### Violation of the Equal Pay Act

57.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

58.     Defendants have discriminated against  Plaintiff  within the meaning of the EPA in violation of the Fair  Labor  Standards  Act  of  1938,  29  U.S.C.  §§ 206, et  seq.,  as  amended by  the  EPA,  by providing  her  with  lower  pay  than  similarly  situated  male  colleagues on the  basis  of  her gender, female, even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

59.     Similarly situated male employees perform  similar  job  duties  and  functions  as Plaintiff, and similarly situated males performed jobs that  required  equal  skill,  effort,  and responsibility,  and  are  or  were  performing  under  similar working conditions.

60.     Defendants discriminated against Plaintiff  by subjecting her to discriminatory pay, discriminatory denials of bonuses and other compensation  incentives,  discriminatory  denial  of

promotions, and other forms of discrimination in compensation in violation of the EPA.

61.     The differential in pay between male and female employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

62.     Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender, in violation of the EPA.

63.     The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Defendants have willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

64.     As a result of Defendants' conduct as alleged in this Complaint, Plaintiff has suffered harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

65.     By reason of Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

66.     Attorneys' fees should be awarded under 29 U.S.C. §216(b).

**COUNT V**
**Retaliation in Violation of the FCRA**

67.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

68.     Defendants' conduct as herein alleged violated the FCRA, which prohibits retaliation because of statutorily-protected activity.

69.     Plaintiff engaged in statutorily-protected activity under the FCRA. The foregoing actions of Defendants constitute retaliation against Plaintiff because of her statutorily-protected

12

activity.

70.    Defendants' actions were willful and done with malice.

71.    As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

72.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
### Retaliation in Violation of the ADEA

73.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

74.     Defendants' conduct as herein alleged violated the FCRA, which prohibits retaliation because of statutorily-protected activity.

75.    Plaintiff engaged in statutorily-protected activity under the FCRA.  The foregoing actions of Defendants constitute retaliation against Plaintiff because of her statutorily-protected activity.

76.    Defendants' actions were willful and done with malice.

77.    As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

78.    Plaintiff requests relief as described in the Prayer for Relief below

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.    Enter a declaratory judgment that the practices complained of in this complaint are unlawful and violate the ADEA, EPA and the FCRA;

2.    Grant all injunctive relief necessary to bring Defendants into compliance with the ADEA, EPA and the FCRA;

3.    Order Defendants to pay the wages, salary, employment benefits, and other

compensation denied or lost to Plaintiff and others similarly situated by reason of Defendants' unlawful actions, in amounts to be proven at trial;

      4.      Order Defendants to pay liquidated damages pursuant to the ADEA;

      5.      Order Defendants to pay compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

      6.      Order Defendants to pay exemplary and punitive damages;

      7.      Order Defendants to pay attorneys' fees and costs of the action;

      8.      Order Defendants to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest; and

      9.      Grant any further relief that the Court deems just and proper.

Dated this 16th day of March, 2018.

Respectfully submitted,

**WHITTEL & MELTON, LLC**

/s/ Jay P. Lechner
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
Jason M. Melton, Esq.
Florida Bar No.: 605034
One Progress Plaza
200 Central Avenue, #400
St. Petersburg, Florida 33701
Telephone: (727) 822-1111
Facsimile: (727) 898-2001
Service Email:
Pleadings@theFLlawfirm.com
lechnerj@theFLlawfirm.com
tstrawter@theFLlawfirm.com
Attorneys for Plaintiff